# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,        )     No. 74547-6-I
                             )
           Respondent,     )     DIVISION ONE
                             )
       v.                  )
                             )
VINOD CHANDRA RAM,       )     UNPUBLISHED
                             )
           Appellant.      )     FILED: June 5, 2017
                             )

Cox, J. – Vinod Ram challenges the constitutionality of the mandatory deoxyribonucleic acid (DNA) collection fee and victim penalty assessment as applied to him. These arguments are neither ripe for review nor do they constitute manifest constitutional error under RAP 2.5(a). We also deny any request for an award of appellate costs to the State.

Ram makes two additional arguments in his Statement of Additional Grounds for Review. Because the police officer properly advised Ram of his rights in accordance with Miranda v. Arizona,[1] his first argument fails. Ram failed to preserve for review his second argument regarding severing a prior identity theft conviction from this trial. We affirm.

A jury convicted Ram of domestic violence offenses. The trial court waived all nonmandatory legal financial obligations but imposed two mandatory obligations—the $500 victim penalty assessment and $100 DNA collection fee.

---

[1] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Ram appeals.

## MANDATORY LEGAL FINANCIAL OBLIGATIONS

Ram claims, for the first time on appeal, that the mandatory victim penalty assessment (VPA) under RCW 7.68.035 and the DNA collection fee under RCW 43.43.7541 violate substantive due process when a court imposes them on an indigent defendant. This argument is premature.

We squarely addressed Ram's argument in State v. Shelton.[2] "The due process clause protects an indigent offender from incarceration based solely on inability to pay court ordered fees."[3] But "[a] preenforcement constitutional challenge to the mandatory [legal financial obligations] is ripe for review on the merits if the issue raised is primarily legal, does not require further factual development, and the challenged action is final."[4] Thus, "constitutional challenge[s] to the DNA fee [and VPA] statute[s] [are] not ripe for review until the State attempts to enforce collection of the fee[s]. '[T]he relevant question is whether the defendant is indigent at the time the State attempts to sanction the defendant for failure to pay.'"[5]

---

[2] 194 Wn. App. 660, 674, 378 P.3d 230 (2016), review denied, 187 Wn.2d 1002 (2017).

[3] Id. at 670.

[4] Id.

[5] Id. at 672-73 (emphasis omitted) (some alterations in original) (quoting State v. Valencia, 169 Wn.2d 782, 789, 239 P.3d 1059 (2010)).

Moreover, a defendant cannot show that an as-applied substantive due process claim is manifest constitutional error until the State seeks to enforce collection of the fees or impose a sanction for failure to pay.[6]

As in Shelton, nothing in this record shows either that the State has attempted to collect the VPA or the DNA collection fee or that it has imposed sanctions for failure to pay.[7] Thus, Ram's as-applied substantive due process challenges are not ripe for review.

Moreover, RAP 2.5(a)(3) bars Ram from raising his challenge for the first time on appeal because the claimed error is not "manifest" "[u]ntil the State seeks to enforce collection of the . . . fee or impose a sanction for failure to pay."[8] The record contains no information about Ram's future ability to pay the DNA collection fee and the VPA.

Additionally, the court must consider the risk of hardship to the parties if it declines to address the merits of the challenge.[9] However, "the potential risk of hardship does not justify review before the relevant facts are fully developed."[10] This record contains no facts regarding Ram's future ability to pay.

---

[6] Id.

[7] See id. at 673.

[8] Id. at 675; see also State v. Stoddard, 192 Wn. App. 222, 228-29, 366 P.3d 474 (2016).

[9] Id. at 670.

[10] Id. at 672.

Accordingly, we decline to review Ram's constitutional challenge to the DNA collection fee and VPA.

## APPELLATE COSTS

Ram asks that no costs be awarded on appeal. We decline to award any such costs to the State on appeal.

When a trial court makes a finding of indigency, that finding continues throughout review unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency.[11]

Here, the trial court found Ram indigent. There is no evidence indicating significant improvement in Ram's financial circumstances since the trial court's finding. Accordingly, there is no basis to award costs on appeal to the State. We decline to do so.

## STATEMENT OF ADDITIONAL GROUNDS

Ram raises two additional ground for review. We disagree with each argument.

### Miranda Rights

Ram argues that the police failed to "fully 'Mirandize' him." We disagree.

Miranda v. Arizona[12] "established a conclusive presumption that all confessions or admissions made during a custodial interrogation are compelled

---

[11] RAP 14.2; see also State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).

[12] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

in violation of the Fifth Amendment's privilege against self-incrimination."[13] Thus, the State may not present as evidence a defendant's statement made during a custodial interrogation unless the defendant was informed of and waived certain rights.[14]

Prior to any questioning during a custodial interrogation, a person must be warned

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.[15]

A person may waive these rights, "provided the waiver is made voluntarily, knowingly and intelligently."[16]

We defer to the trial court's findings of fact but review de novo its legal conclusions from those findings.[17]

Here, Ram challenges how Sergeant Michel Bos advised him of his rights. He specifically argues that Sergeant Bos did not advise him of his right to remain silent. The record shows otherwise.

---

[13] In re Pers. Restraint of Cross, 180 Wn.2d 664, 682, 327 P.3d 660 (2014).

[14] Miranda, 384 U.S. at 444.

[15] Id. at 479.

[16] Id. at 444

[17] Cross, 180 Wn.2d at 681.

The trial court held a CrR 3.5 hearing to determine the admissibility of Ram's statements to police surrounding his arrest. Sergeant Bos testified about his participation in the case and his interaction with Ram. The police placed Ram under arrest, and Sergeant Bos advised him of his rights. Sergeant Bos specifically read the warning from a "standard card . . . issued by the Washington State Criminal Justice Commission."[18] He read the following to Ram:

> "You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right at this time to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements."[19]

Sergeant Bos then testified that the card contained the following information regarding waiver of these rights:

> "*After the warning*, and in order to secure a waiver, the following questions should be asked and an affirmative reply secured to each question: 1. Do you understand each of these rights I have explained to you? . . . 2. Having these rights in mind, do you wish to talk to me?"[20]

Sergeant Bos also read the above information to Ram but did not read the last question because he "had no reason . . . to question [Ram] about what happened." The trial court concluded that "the <u>Miranda</u> rights that were communicated to Mr. Ram are complete and are accurate."

---

[18] Report of Proceedings Vol. 1 (October 27, 2015) at 58.

[19] Id. at 59.

[20] Id. (emphasis added).

Because Sergeant Bos advised Ram of his rights in accordance with Miranda, Ram's argument fails. That Sergeant Bos did not fully ask the questions that followed the warning is irrelevant to the proper analysis of this claim.

### Severance

Ram argues that the trial court abused its discretion by denying his motion to sever the charges. We disagree.

Under CrR 4.3(a), joining offenses in one trial is allowed where the charged offenses "'(1) [a]re of the same or similar character, even if not part of a single scheme or plan; or (2) [a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.'"[21] But offenses properly joined under this rule may be severed if the trial court "'determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.'"[22]

Pretrial, Ram moved to sever from this trial four prior charges: felony harassment, two counts of witness intimidation, and a court order violation. He did not mention his prior identity theft trial in the motion.

The trial court heard and denied the motion. After the State rested, Ram renewed his motion to sever in order to preserve the issue as argued. The trial court again denied the motion.

---

[21] State v. Bluford, No. 93668-4, slip op. at 11 (Wash. May 4, 2017), http://www.courts.wa.gov/opinions/pdf/936684.pdf (quoting CrR 4.3(a)).

[22] State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990) (quoting CrR 4.4(b)).

Here, Ram makes a new argument. He focuses on his prior identity theft trial. He further argues that the State "needed to tie the motive to intimidate [the witness] to the identity thefts in order to add strength to each of the counts. . . ." This argument was not made in his motions to sever. Thus, we do not consider it further.[23]

We affirm the judgment and sentence. We deny any award of costs of appeal to the State.

_Cox, J._

WE CONCUR:

_Trickey, ACJ_          _Appelwick, J_

---

[23] See RAP 2.5(a).